UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| DANIEL BUTENHOFF and<br>CHRISTINE BUTENHOFF,<br>    Plaintiffs,<br><br>VS.<br><br><br><br>NCO FINANCIAL SYSTEMS, INC.,<br>    Defendant. | CIVIL ACTION NO. _____<br><br>JURY TRIAL DEMANDED<br><br>UNLAWFUL DEBT COLLECTION<br>PRACTICES |

## COMPLAINT

### I. INTRODUCTION

1.   Plaintiffs Daniel Butenhoff and Christine Butenhoff allege that Defendant engaged in abusive, deceptive, and unfair acts in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (hereinafter "FDCPA").

### II. JURISDICTION AND VENUE

2.   Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), and 28 U.S.C. § 1337. Venue in this District is proper in that the Defendant transacted business here and the conduct complained of occurred here.

### III. PARTIES

3.   Plaintiffs are natural persons residing in the County of St. Louis, State of Missouri.

4.   Defendant, NCO Financial Systems, Inc., ("NCO") is a Pennsylvania corporation registered to do business in Missouri.

5.   Defendant is engaged in the collection of debts from consumers using the mail and telephone. Defendant regularly attempts to collect consumer debts it purchases after default and/or

consumer debts alleged to be due to another. Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

6. The acts of Defendant alleged hereinafter were performed by its employees acting within the scope of their actual or apparent authority.

## IV. FACTUAL ALLEGATIONS

7. In April, 2007, Plaintiff Daniel Butenhoff (hereinafter "Mr. Butenhoff") had been out of work for approximately five months, and had been unable to make regularly scheduled payments on his Capitol One credit card.

8. Mr. Butenhoff contacted Capitol One and advised them he did not have a job. He was told that NCO had taken over the debt and that Capitol One would not discuss the matter with him.

9. Near the end of April, 2007, Mr. Butenhoff began receiving telephone calls from an agent of NCO. Mr. Butenhoff had moved back into his parent's home due to his unemployment, and the telephone is in the name of his mother, Plaintiff Christine Butenhoff, and his father. Mr. Butenhoff retained a cell phone, however.

10. Mr. Butenhoff did not receive any written communication from NCO at this time.

11. Agents of NCO began calling three to four times per day on the parents' telephone, leaving messages regarding the debt, and demanding that Mr. Butenhoff return the call.

12. Agents of NCO also began making multiple calls to Mr. Butenhoff on his cell phone.

13. On or about August 16, 2007, an agent of NCO called and left a message on the phone belonging to Plaintiff Christine Butenhoff and her husband. The message stated that if Daniel didn't call back they would pursue legal action. This message was heard by others in the family.

14. In response to the aforementioned phone call on or about August 16, Mr. Butenhoff telephoned NCO to tell them he had just obtained a new job and asked to make payment arrangements.

Mr. Butenhoff spoke to Randall Green who asked Mr. Butenhoff to hold on to speak to Green's supervisor.

15. The supervisor demanded that Mr. Butenhoff immediately pay two thirds of the alleged debt, and demanded his bank account number and routing number for his checking account. The supervisor bullied Mr. Butenhoff into providing the banking information, but Mr. Butenhoff also informed him that there was no money in the checking account, as he had just started working again.

16. When Mr. Butenhoff told NCO that he could not pay two thirds of the debt, the supervisor then advised him NCO would accept $790 a month, but Mr. Butenhoff advised that he could not pay that amount, either. No agreement was reached as to payments.

17. In late August, Mr. Butenhoff received a collection notice dated August 25, 2007, advising that he had authorized a post-dated check in the amount of $790 to be taken from his account on August 31, 2007. Mr. Butenhoff had not authorized the check, nor was there sufficient money in the bank account to pay that amount.

18. About the same time, Mr. Butenhoff received his first written communication from NCO, which was a collection notice dated August 26, 2007, which included a recitation of his rights to dispute the debt or seek verification for it.

19. On or about August 29, 2007, an agent of NCO called, and left another message on Mr. Butenhoff's parents' telephone. This message gave details about the debt, about NCO's demand for $790 per month, and was heard by other members of the family, including, but not limited to, Plaintiff Christine Butenhoff, Mr. Butenhoff's mother.

20. As a result of hearing the message, and knowing that it would be impossible for her son to send NCO $790, Mrs. Butenhoff called NCO, without permission from her son.

21. Christine Butenhoff spoke with some she believed to be Randall Green, who was extremely rude and screamed at Mrs. Butenhoff. Mrs. Butenhoff asked him to stop calling her son on her telephone.

22. The person believed to be Randall Green proceeded to discuss the matter with Mrs. Butenhoff despite the fact that Mr. Butenhoff had not given permission for NCO to discuss his financial difficulties with his mother. He stated to Mrs. Butenhoff, "You need to step up to the plate, lady. Do what it takes to keep your son out of jail."

23. Mr. Butenhoff called NCO again that same day, after his mother spoke with them, and Green's supervisor yelled and screamed at him on the phone so much that his mother, father, and other members of his family could hear NCO across the room through the phone.

24. Because Mr. Butenhoff and his parents believed NCO could have Mr. Butenhoff put in jail for not paying the debt, Mr. Butenhoff agreed to send $790 immediately, and the same amount every month.

25. The next day, Mr. Butenhoff's parents borrowed $790, using their home as security, and wired it to NCO via Western Union.

26. Despite wiring the money, on or about August 31, 2007, an agent of NCO called again, once more leaving a message, and even more explicitly threatening Mr. Butenhoff with jail.

27. Mr. Butenhoff's mentally disabled brother heard the message and believed his brother was going immediately to jail. The brother was extremely distressed, cried and went to his room to listen to the police scanner expecting the police to come to the door any minute.

28. On or about August 31, 2007, Mr. Butenhoff called NCO to give them the confirmation number on the payment in the amount of $790 he had sent via Western Union.

4

29. Despite having this information, on or about September 5, 2007, an agent of NCO called again, accusing Mr. Butenhoff of lying about the wire transfer.

30. The agent of NCO told Mr. Butenhoff that they were disappointed that "you didn't keep your word." Mr. Butenhoff once more provided the Western Union tracking number.

31. The agent of NCO then attempted to get Mr. Butenhoff to send more money by saying he could "cut a deal" with him and settle the account for one-third of the balance. Mr. Butenhoff told NCO's agent he had no money with which to settle the account.

32. On or about September 13, 2007, an agent of NCO called Plaintiff and left a message stating they needed him to call them back "regarding a time sensitive issue."

33. Believing there to be some urgent matter, Mr. Butenhoff returned the call and learned NCO was again claiming not to have received the wire transfer of $790 and demanding more money and Mr. Butenhoff's banking information again.

34. On or about September 17, 2007, an agent of NCO called and once again wanted Plaintiff's bank information, which they already had.

35. On or about September 17, 2007, Plaintiff received a letter from NCO requesting the same bank information.

## CAUSE OF ACTION

### VIOLATIONS OF THE FDCPA

36. Plaintiffs incorporate herein by reference each and every prior allegation and fact as though fully restated and realleged.

37. Defendant's actions violated the FDCPA. The violations include, but are not limited to, the following:

(a) The Defendant violated 15 U.S.C. § 1692b in its communication with third parties;

(b) The Defendant violated 15 U.S.C. § 1692c(b) by discussing the matter with third parties without the consumer's permission;

(c) The Defendant's acts constitute harassment, oppression, or abuse and are violations of 15 U.S.C. § 1692d;

(d) The Defendant's acts were false, deceptive, and/or misleading and violated 15 U.S.C. §1692e;

(e) The Defendant's acts were unfair and/or unconscionable and violated 15 U.S.C. § 1692f; and

(f) The Defendant violated 15 U.S.C. § 1692g by failing to send the initial communication letter within five days after the initial communication with a consumer.

38. As a result of the above violations of the FDCPA, the Defendant is liable to the Plaintiff for actual damages, statutory damages, and costs and attorney's fees.

WHEREFORE, Plaintiffs respectfully pray that judgment be entered against the Defendant for the following:

A. Actual damages;

B. Statutory damages pursuant to 15 U.S.C. § 1692k;

C. Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k; and

D. For such other and further relief as may be just and proper.

Respectfully submitted,

DANIEL BUTENHOFF
CHRISTINE BUTENHOFF

By: _____
Debra K. Lumpkins, E.D.Mo. # 502756
Gateway Legal Services, Inc.
Attorneys for Plaintiffs
200 N. Broadway, Suite 950
St. Louis, MO 63102
(314) 534-0404; Fax: (314) 652-8308
dlumpkins@gatewaylegal.org

## VERIFICATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF

STATE OF MISSOURI        )
                         ) ss
COUNTY OF ST. LOUIS      )

Daniel Butenhoff, having first been duly sworn and upon oath, deposes and says as follows:

1. I am a Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

_Daniel Butenhoff_
Daniel Butenhoff

Subscribed and sworn to before me this _8_ day of April, 2008.

_Mary E. Hansen_
Notary Public

My commission expires: May 2, 2009

> MARY E. HANSEN
> NOTARY PUBLIC-NOTARY SEAL
> STATE OF MISSOURI, ST. LOUIS COUNTY
> COMMISSION #05487554
> MY COMMISSION EXPIRES MAY 2, 2009

## VERIFICATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF

STATE OF MISSOURI )
) ss
COUNTY OF ST. LOUIS )

Christine Butenhoff, having first been duly sworn and upon oath, deposes and says as follows:

1. I am a Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

_Christine Butenhoff_
Christine Butenhoff

Subscribed and sworn to before me
this 8th day of April, 2008.

_Mary E. Hansen_
Notary Public

My commission expires: May 2, 2009

MARY E. HANSEN
NOTARY PUBLIC-NOTARY SEAL
STATE OF MISSOURI, ST. LOUIS COUNTY
COMMISSION #05487554
MY COMMISSION EXPIRES MAY 2, 2009

8